We are now going to move to appeal 24-3091 Singh v. Bondi. Mr. Krause will begin with you. Good morning. May it please the court, my name is Ben Krause and I represent Gurkirat Singh. Mr. Singh is challenging the Executive Office for Immigration Review's denial of his application for asylum and withholding of removal. And with my time this morning, I want to address three main points. First, that the agency erred in finding that Mr. Singh did not suffer harm that rose to the level of past persecution. Second, I want to address whether substantial evidence supports the agency's conclusion that he could reasonably relocate within India. And finally, I want to address the agency's error in applying the incorrect standard review when it internally, the BIA, reviewed the immigration judge's decision. And I want to start first with the agency's conclusion that Mr. Singh did not suffer harm rising to the level of past persecution. And I identify two distinct types of errors the agency made here. And the first one is it parsed out and segmented out the types of harm that Mr. Singh suffered instead of considering them all in the aggregate. And when we're looking at this case today, we benefit from the fact that there is no meaningful dispute about the facts here. Mr. Singh joined a fringe Punjabi party, and within 18 months, he had been violently attacked two times by members of a national party who beat him the first time for more than 10 minutes, more than the length of this argument, with wooden weapons. And the second time, they did it again, beating him for at least 10 minutes around his body, causing him to yell out with pain. And in the middle of this attack or during this attack, they said, quote, this time we will kill you. The agency concluded that a couple of things. One of them was that this attack did not, the two physical attacks that they suffered did not rise to the level of past persecution. And they compared that to this board's precedent in Chuchman and a few other cases. And then in a separate paragraph in the Board of Immigration Appeals decision, they said, well, also the death threat, this time we will kill you, does not separately amount to past persecution because it was not immediate and credible enough the way, for instance, this court has treated death threats in NLA. And the mistake there legally is it's doing this parsing out of the different kinds of harm and measuring physical harm against a case involving solely physical harm, Chuchman, and threats against cases. Did you make that argument below? It seems like you did not exhaust your aggregation argument, which you're raising before us now. I think that, I think throughout the case, we assumed sometimes that harm is being aggregated. And I wish that I'd used aggregates or a citation to this court's decision. Even not using the word aggregate, just the way it was presented below, it seemed as if you segregated them. And the way you talked about physical harm and then you talked about the death threat rather than combining it. I'm not saying you have to use the magic word of aggregation. Yeah, and I've reread my own brief here, and I wish I had been clearer in describing the threats in the aggregate there. But I think the main and clearest example of this reasoning happened from the Board of Immigration Appeals' decision after I had submitted my brief in this case. So I think the error is not, should not be deemed waived because the board continued to make the same error in its decision. In fact, in its clearest form of segmenting the two forms of hardship out. But even setting aside the legal error here, I think substantial evidence doesn't support the agency's conclusion that this harm doesn't rise to the level of past persecution. I think now is a time to address this court's decision in Kamaljeet Singh versus Garland, last year's case involving in many ways very similar facts. But the distinction here between, as this court parses out Kamaljeet Singh from Gurkirat Singh's case, is the use of weapons and the immediate death threat involved in that second attack. Where if not for the bystanders who interrupted the attack, Gurkirat Singh may have been actually killed in the moment. I think both of those things do elevate the hardship, the harm of Mr. Singh's case beyond that of Kamaljeet Singh in the prior case. But I do also want to address whether substantial evidence supports the agency's conclusion that Mr. Singh did not or could have reasonably relocated within India. The reasoning seems to rely on the fact that Mr. Singh is a relatively young male and in good health. Those are the factors, and I think those are all very good and relevant factors to analyze when a court is looking at whether it's reasonable to relocate. But the other factors the court essentially ignores. Mr. Singh is a Punjabi speaker. Punjabi speakers make up about 19 million of India's billion-plus population. He is... But the court didn't ignore that. The court noted he was able to come to the United States and he didn't speak English when he came to the United States. Yeah. And, Your Honor, I think the U.S. analogy is a really good one because in the United where it's relatively easy to find work, find someone to take you to the DMV to get a driver's license, there's a big community of people who can support you here in the U.S. And perhaps there may be in other parts of India as well, like neighboring Haryana state, but it's not that he can simply move to any part of this immense country and relocate. In fact, the government's own country condition evidence that they submitted in the record at page 208, the government's records suggest that it would be very difficult for an uneducated Punjabi farmer to relocate to another part of India. And so when we look at what is reasonable under the circumstances, I think the very difficult move of picking up and beginning a new life in a place where you don't speak the language is extremely important. Lastly, I did want to address... Before you move off of that point, did you offer any evidence below that low-level man party members are...to rebut that low-level man party members are not targeted outside of Punjabi? There's no evidence on the record to suggest that low-level man party members would be targeted outside of Punjab. There were several instances in our filings that document party workers being harmed in Punjab, but not outside of Punjab. Those are separate issues, though, as the immigration regulations look at in 8 CFR 1208.13. The issue of whether you're going to be harmed anywhere in India is one part of it, and then the reasonableness of having to pick up your life and begin a new life somewhere else in your country is the other factor. And so I think I'm relying... You're not contesting, then, that...what you just said was the first factor about low-level man employees not being targeted outside of Punjab. I think that does get to the first factor, whether it's possible to relocate. The way that sometimes it's set up is, can you relocate, and then would that relocation be reasonable? I think that gets to the first, whether it's possible. The last thing I did want to address is the burden of...or the standard of review that the sole appellate immigration judge applied in looking at the immigration judge's decision. Board precedent affords Mr. Singh a de novo review of that mixed question of fact in law, where you take undisputed facts and apply them to the law. It's quite unlike the court's standard that it's applying to the facts here in this case, but it is one that the board has announced in a matter of ZZO and a matter of RAF. Why doesn't the board's reference to Burban occur any standard of review question? To be honest, I was actually a little bit puzzled by that. I'm sorry. I wasn't able to wrap my head around that. The court in Burbano, the board adopted the reasoning and ideas of the immigration judge below, but we have no idea the scrutiny that it applied in making that decision to adopt those factual findings and those legal determinations. In fact, the only clue that we have is it repeatedly...the appellate immigration judge says we find no clear error on just about every one of its decisions, which appear on their face to be mixed questions of fact and law. And if there's nothing further... Would you reserve the remainder of your time? I would like to. Thank you. Very good. Thank you, Mr. Krause. Ms. Pino, we'll move to you now for argument on behalf of the appellate. Good morning, Your Honors. I may please the court. Tatiana Pino for the Attorney General. The court should deny this petition for review because substantial evidence supports the agency's denial of asylum, withholding, and cap protection. Under this highly deferential standard, the record does not compel reversal of the agency's reasonable conclusion that petitioners' past harm in Punjab, India by members of the Congress Party did not rise to the level of persecution. I'd like to address some of the points on this...related to past persecution that petitioner addressed, as well as the relocation issue and the standard of review issue. First, as Judge St. Eve pointed out, petitioner never exhausted the cumulative harm argument. In this court, exhaustion is mandatory. That is also confirmed by the Supreme Court's recent decision in Santos-Zacharias, so the court should not even entertain that argument. Even so, the argument falls flat on its face on the merits, particularly with regard to the threat. It's one thing for, you know, just because the agency discussed in separate paragraphs physical harm and threats doesn't mean that those facts were considered separately. In fact, if you look at the agency's discussion of the threats, it is discussed in the context of the November 2017 physical assault, and the agency considers that it was uttered right before or during the physical assault, and it looked at the injuries that resulted from that assault to find that those injuries did not suggest that the threat was credible or imminent. So there you see, in the agency's discussion, it's not discussing the threats in a vacuum, but rather in the context of the physical assaults. Next, petitioner tries to distinguish Kalmajit Singh, but his attempt should be seen as meritless. As he points out, the petitioners in both cases were injured with the same types of  There was actually a threat in Kalmajit Singh. The threat was a little bit different. It was a threat that the petitioner will suffer consequences, and it was uttered as the assailants fled in the second attack. But nevertheless, there was a threat in that case as well, and the nature of the injuries are very similar. In both cases, you have bruising and swelling, but actually in Kalmajit Singh, you have arguably worse harm. You have the petitioner in that case suffering broken teeth and requiring stitches to his head. And so even with those facts, this court held that the record did not compel reversal of the agency's past persecution determination. Moving on to relocation, it's petitioner's burden to satisfy two requirements for relocation. The first is to show that internal relocation would be unreasonable for him, and the second is that it would be unsafe for him. He conceded today that safety is not an issue, and by conceding that point, that really closes the matter about internal relocation. And just more to the point, he conceded he was a low-level man party worker, and that would be of no interest to central authorities in India. He didn't concede the first point, though, and you need both. You need both, yes. You need both, and that's under the regulations. And just to talk about the reasonableness factor, the agency expressly considered his Pujabi language argument, as Your Honors pointed out, and found that it was reasonable to expect him to relocate, given his ability to successfully relocate in the United States, where English is the dominant language. He's away from his family. He's young. He's healthy. I believe he's almost 30 years old. Moreover, the DOJ report at 206 of the record explains that there are Sikhs all over India, and it explains that internal relocation for Sikhs in general in India is not an issue, so long as they are outside of Punjab. And turning to the Burbano and standard of review point that he made, so let's look at I want to make three points here. The first is the board expressly acknowledged the different standards of review at record page three, I believe it's the second paragraph, according to its own regulations. So we see the board's express acknowledgment of the different standards of review. The second point is, what does Burbano mean? Adopting, and this is coming straight from the Burbano decision, it explains, adopting or affirming a decision of the immigration judge under Burbano means that the board is in agreement with the reasoning and result of that decision. A Burbano affirmance is a statement that the board's conclusions upon review of the record coincide with those of the immigration judge articulated in the decision. And so when you think about a Burbano affirmance, you could essentially, it's a full adoption and affirmance, and it's almost like an incorporation of the immigration judge's decision. We've said you can't just merely parrot the correct standard of review. Why isn't just referring to Burbano here just parroting the standard of review? Well, it's not only doing that. You have the board also addressing Petitioner's arguments on appeal separately, and that's where Petitioner gets his arguments that there was essentially only a clear error review, but that's actually incorrect. If you look at the board's decision, let's start with the past persecution determination. You could find that the first full paragraph of page 4 of the record, right before the citation to Singh v. Garland, you have a statement by the board that is affirming the IJ's legal conclusion that the harm that Petitioner experienced in the two separate attacks by Congress party members was not severe enough in type, scope, or duration to rise to the level of persecution under the INA. So you have even that phrase, under the INA, shows that the board is applying facts to law, and there's no clear error statement in what I just read. And that is affirmance with the legal conclusion. Then to support that affirmance, it says we discern no clear error in the findings that Petitioner experienced two separate attacks by Congress party members. He saw a doctor, and he suffered swelling and bruising, and there was a second attack that required ointment for scratches. And so you see a recitation of the factual findings reviewed for clear error. Same for the internal relocation conclusion. You have, and this is a quote from record page 4, the IJ correctly found that Petitioner did not meet his burden of proving that he could not reasonably relocate to avoid future persecution. That is an agreement with the legal conclusion, and to support that, the board says we discern no clear error in the IJ's findings that he was a low-level worker for the Mann party, there is insufficient evidence that he was targeted for harm outside of Punjab, or that he can reasonably relocate in India. So taken all together, it's very clear that the board applied the correct standards of review contrary to what Petitioner is claiming. And I'll just highlight, I'll end on the standard of review here. This is a highly deferential standard of review, the substantial evidence standard. The court can only reverse if it finds that no other reasonable facts finder could find, as the agency did here, and the record does not compel reversal. Thank you, Ms. Pino. Thank you so much. Mr. Cross, we'll move to you now for rebuttal. Thank you, and I'll be brief. The only point I wanted to raise in rebuttal was the government has suggested that you have to show that Mr. Singh would have been persecuted all throughout India and his relocation would have been inappropriate. But I don't actually fully understand what that means. If his relocation is not reasonable, if it's not a reasonable life that he could have in a different part of India, we have met our burden that he cannot move to another part. He doesn't have to live in hiding as court precedent has held. Maybe or in extreme poverty. These issues don't seem like two separate issues. Thank you. Thank you very much, Mr. Cross. Thank you, Ms. Pino. The case will be taken under advisement. The court is going to take a brief recess at this time.